ADONIRAM CLARK v. CHARLES BUTTS and Others.

July 15, 1898.

Nos. 11,179—(250).

**Deed—Name of Grantee Left Blank.**

As between the immediate parties, a deed executed with the name of the grantee left in blank is of no force or effect.

**Same—Surrender of Note—Judgment upon Note Valid.**

The parties to whom said deed was delivered held, against the grantor therein, a note for $200, which they then surrendered, but it was at the same time agreed that they should be allowed to commence an action against her for the amount of the note, and obtain judgment therein. *Held.* under these circumstances, the note was only surrendered in form, and still furnished a basis for the action so brought upon it.

**Transcript of Judgment before Record of Judgment—Rockwood v. Davenport Overruled.**

In an action in the municipal court of St. Paul, the judgment roll was made up, and a transcript of the judgment as entered in the roll taken from that court and filed and docketed in the district court of Ramsey county, before any judgment was entered in the judgment book in the municipal court. *Held,* the judgment or copy thereof in the judgment roll became thereby the judgment of the municipal court; it is valid, though irregular; and the transcript of it filed in the district court is also valid. Rockwood v. Davenport, 37 Minn. 533, overruled.

**Redemption from Foreclosure—Waiver of Defects by Receipt of Money.**

Where the purchaser at a foreclosure sale accepted from the sheriff the money paid him by a judgment creditor to redeem the property, *held* such purchaser thereby waived a defect in the notice of redemption filed by the creditor, and waived also the failure of the creditor to present to the sheriff an affidavit of the amount due on the judgment, and could not

recall such waiver by returning the redemption money to the sheriff seven or eight days after he received it.

Action in the district court for Ramsey county against Charles Butts, John E. Jaques, Sarah F. Jaques, William D. George, Lillie J. George, Rush B. Wheeler, Mary Browning, Clara H. Greene, and F. E. Elmund to determine adverse claims to real estate. The cause was tried before O. B. Lewis, J., without a jury, who found for plaintiff. From an order denying the motion of defendant Mary Browning for a new trial, she appealed. Reversed.

*Walter L. Chapin*, for appellant.

Wilmot, the purchaser at the foreclosure sale, could not question the validity of the judgment under which the redemption was made. Bovey-DeL. Lumber Co. v. Tucker, 48 Minn. 223; New England M. L. Ins. Co. v. Capehart, 63 Minn. 120; Pabst B. Co. v. Jensen, 68 Minn. 293. Any question of regularity as to the redemption was waived by Wilmot taking the redemption money. This court has held that in such case even the nonexistence in fact of a lien under which redemption claim is made would not be fatal or material. Todd v. Johnson, 50 Minn. 310; Todd v. Johnson, 56 Minn. 60; Wilson v. Hayes, 40 Minn. 531; Tice v. Russell, 43 Minn. 66.

*How & Butler*, for respondent Clark, and *Stiles W. Burr*, for respondent Greene.

The judgment of the municipal court under which the redemption was made was void, for the reason that, at the time the judgment was transcripted to the district court and docketed, no judgment had yet been entered in the judgment book of the municipal court, and therefore the alleged judgment never became a lien. Nor could the subsequent entry of judgment give life or effect to the premature filing of the judgment-roll copy, transcripting and docketing. Maurin v. Carnes, 71 Minn. 308; Rockwood v. Davenport, 37 Minn. 533; Hunter v. Cleveland C. Stove Co., 31 Minn. 505; Ferguson v. Kumler, 25 Minn. 183; Townshend v. Wesson, 4 Duer, 342.

A mortgagee has a right to attack a judgment against the mortgagor, by virtue of which it is attempted to redeem from the foreclosure sale, on the ground that the judgment is collusive, and ob-

tained for the purpose of defeating the mortgagee's lien by a redemption. 2 Freeman, Judgm. §§ 335–337; Hunter v. Cleveland C. Stove Co., supra; Henderson v. Thornton, 37 Miss. 448; Bergman v. Hutcheson, 60 Miss. 872; Sidensparker v. Sidensparker, 52 Me. 481. There can be no waiver of defects, acquiescence in the redemption, or estoppel against the plaintiff, because these defects were not known, and could not be known, by him at the time that Wilmot took the money. Pence v. Langdon, 99 U. S. 578; Shaw v. Spencer, 100 Mass. 382; Holdsworth v. Tucker, 143 Mass. 369.

CANTY, J.

On May 8, 1890, one Waterman and one George were the owners of a certain outlot in the city of St. Paul. On that day they mortgaged it to plaintiff to secure the payment to him of the sum of $3,500. Thereafter the interest of Waterman was transferred to his wife, Elizabeth J. Waterman, through mesne conveyance. Thereafter, default having been made in the payment of an instalment of interest due on the mortgage indebtedness, plaintiff duly commenced proceedings to foreclose the mortgage under the power of sale therein contained, and pursuant thereto the lot was sold on April 19, 1892, at the foreclosure sale, to one Wilmot, for the sum of $232.15, the same being the amount of such instalment of interest and the costs of the foreclosure proceedings. The year to redeem expired, and no redemption was made by the owner. On April 19, 1893, the last day of the year, the defendants Butts & Jaques filed a notice of intention to redeem as judgment creditors under a judgment in their favor against Mrs. Waterman, claimed to have been docketed in the district court of Ramsey county on September 30, 1892, for the sum of $214. On April 21, 1893, Butts & Jaques paid to the sheriff the amount necessary to redeem as such creditors from the foreclosure sale, and received from him a certificate of redemption. On the next day Wilmot received from the sheriff the redemption money so paid to him by Butts & Jaques.

Plaintiff claims that the alleged judgment of Butts & Jaques, and the alleged redemption under it, are both fraudulent and void for various reasons, and that before Wilmot received the redemption

money from the sheriff he assigned the sheriff's certificate of foreclosure sale to one Wheeler, who thereafter assigned it to plaintiff.

This is an action to determine adverse claims. On the trial the court below found for plaintiff. An appeal from an order denying a new trial is taken by the defendant Browning, who claims under Butts & Jaques.

The trial court found that Wilmot did not receive the redemption money from the sheriff until after he (Wilmot) had executed and delivered to Wheeler the assignment of the sheriff's certificate of foreclosure sale. Appellant contends that this finding is not supported by the evidence, but that, on the contrary, it conclusively appears from the evidence that Wilmot accepted the redemption money before he delivered the assignment to Wheeler.

In our opinion the point is well taken. Wheeler & Howell, real-estate agents, were acting for plaintiff in an attempt to procure for him the rights obtained by Wilmot under the foreclosure sale. A form of assignment of the sheriff's certificate from Wilmot to Wheeler was drawn up by Howell, and he and Wilmot met at the office of the attorney of the latter on April 22, 1893. Wilmot signed the assignment, and acknowledged it before his attorney, who was a notary public. He left the assignment in the hands of his attorney, and went away to ascertain the amount to be paid by Wheeler for the assignment; it being orally agreed that Wheeler should pay the amount bid at the sale, and interest for this and another assignment, and also $50 "bonus," and Howell, acting for Wheeler, was then and there ready to pay the amounts. Instead of returning, Wilmot, on the same day, went to the sheriff's office, and drew out the redemption money paid in by Butts & Jaques. Wheeler did not pay anything for the assignment, and the assignment was not delivered until after Wilmot had drawn out the redemption money. This is conclusively established by the evidence. By a subsequent arrangement made between Wheeler and Wilmot, the money was returned to the sheriff on May 1, 1893, and on that day, or a day or two before, the assignment of the sheriff's certificate of this lot was delivered to Howell for Wheeler.

The attempted purchase of the sheriff's certificate was a cash transaction. It is clear that the parties did not intend that the as-

signment should be delivered, or that any title to the certificate or the lot should pass to Wheeler, until the consideration for the assignment had been paid. At the time Wilmot received the redemption money he was the owner of the sheriff's certificate and of the lot, subject to redemption by creditors, and neither plaintiff nor Wheeler had any enforceable interest, either legal or equitable, in either the lot or the certificate. The negotiations for the purchase of the certificate did not prevent Wilmot's acts, in taking the redemption money, from having full effect as a waiver of the defects in the redemption of Butts & Jaques.

Let us now consider the alleged defects in the judgment and redemption. Butts & Jaques held the note of Mr. Waterman, dated September 21, 1891, and due in one year thereafter. On September 12, 1892, they procured from the Watermans a deed of this property with the name of the grantee in blank. In consideration thereof, Butts & Jaques agreed to pay the Watermans $400,—$196 in cash, and the balance by surrendering the note, which was not yet due. As a part of the same transaction, it was agreed that Butts & Jaques might commence an action against Mrs. Waterman, and take judgment against her for the amount of the note. The cash was paid, and the note surrendered and canceled. On September 20, 1892, Butts & Jaques drew up a complaint against her in an action in the municipal court of St. Paul, procured her to admit service of the summons, and to put in an answer which they had prepared for her, and to sign a stipulation for judgment in their favor. They then proceeded to enter judgment in the municipal court, and to take a transcript of such judgment to the district court in the manner hereinafter stated. On this state of facts the trial court was not warranted in finding, as it did, that the Watermans conveyed the land to Butts & Jaques. The deed executed in blank did not have that effect, or any effect. Allen v. Allen, 48 Minn. 462, 51 N. W. 473.

Neither was the court warranted in finding, as it did, that, by reason of said facts, Butts & Jaques had ceased to be creditors of Mrs. Waterman, and that the action so brought against her was wholly without foundation. Whether the blank deed would form a sufficient consideration, either nominal or otherwise, for the surrender

and cancellation of the note, we need not consider. Such deed was not the only consideration. A part of the consideration was that Butts & Jaques should be allowed to bring the very action they brought and to obtain judgment therein. Then the note was only surrendered and cancelled in form. It in fact remained in force so far that it was to be the foundation of an action and a judgment against Mrs. Waterman for the amount of it.

The court further found that a judgment roll was made up in the municipal court in that action, consisting of the pleadings, stipulation for judgment, an order of that court for judgment on the stipulation and a copy of the proposed judgment; that on the same day a certified copy of said proposed copy of the judgment was filed and docketed in the district court of Ramsey county as a transcript of the judgment in that action; that some time afterwards a judgment was entered in that action in the judgment book in the municipal court, but that no such judgment was entered in the judgment book before the transcript was filed in the district court.

On the authority of Rockwood v. Davenport, 37 Minn. 533, 35 N. W. 377, and Maurin v. Carnes, 71 Minn. 308, 74 N. W. 139, it is contended by respondent that there was no judgment in the municipal court until judgment was entered in the judgment book, and that the alleged transcript filed and docketed in the district court cannot be a transcript of the judgment, and is void, because no judgment had been entered in the municipal court when the alleged transcript was taken out of the municipal court and filed in the district court.

It must be admitted that the cases cited are authority for respondent's position, but, after much careful consideration of the question, we have come to the conclusion that these cases should be overruled. They have deprived judgments of courts of record of their absolute verity, and furnished a way by which such judgments may be impeached and overthrown by parol evidence of the most uncertain character. This is wholly contrary to the well-established theory that a judgment of a court of record imports absolute verity. It is only necessary, according to the theory in the Rockwood case, to find, years after the judgment is entered, some ex clerk, deputy clerk, copyist, or other person who will testify that the

docket entries were made, or the execution was issued, or the transcript was taken out, after the copy of the judgment was entered in the judgment roll, and before a judgment was entered in the judgment book, and this renders all proceedings under the judgment void.   The Rockwood case was followed in the Maurin case.

Taking the statute literally as it reads, it must be admitted that it furnishes some color for the position taken in the Rockwood case. G. S. 1894, § 5421, provides that the judgment shall be entered in the judgment book.   Section 5423 provides:

"Immediately after entering the judgment, the clerk shall attach together and file the following papers, which shall constitute the judgment roll."   Then follows a list of the papers, including "a copy of the judgment."

Section 5425 provides that on filing the judgment roll, where the judgment is for the payment of money, the judgment may be docketed.

But it must be remembered that a judgment of a court of record is not a mere creature of statute.   If the court has jurisdiction, a departure from the statute in the manner of entering the judgment is a mere irregularity, and does not render void the judgment or the proceedings under it.   The validity of the judgment cannot depend on whether it is written in one part of the clerk's records or another; whether it is written in the judgment book or in the judgment roll.   If, before entering a judgment in the judgment book, the judgment roll is made up with a judgment entered therein such that it would be a proper judgment if entered in the judgment book, and the judgment is docketed, or an execution issued, or a transcript of the judgment is taken out, before entering judgment in the judgment book, this amounts to treating the judgment entered in the judgment roll as the judgment in fact.   And although it is irregular to enter the judgment in the judgment roll, instead of entering it in the judgment book, yet the judgment entered in the roll will support the docketing, execution, etc., and will not be vitiated or destroyed by subsequently entering a copy or duplicate of it in the judgment book.

Then Butts & Jaques had a valid judgment which was a lien on

the property, and all the minor irregularities in the manner of its entry did not go to the jurisdiction or render the judgment void. By accepting the redemption money Wilmot waived all of the irregularities in the redemption, such as the failure to present to the sheriff an affidavit of the amount due and the alleged defect in the notice of intention to redeem; and the return of the redemption money to the sheriff, a week or more after it was received from him, did not have the effect of recalling or rescinding that waiver. Under the circumstances above stated, the allegations and findings that the acts of Butts & Jaques and the Watermans were fraudulent amount to nothing. They have not done anything but what the law allows them to do.

There is nothing in respondent's claim that the certificate of redemption is defective because it recites that the judgment on which the redemption was made was entered in the district court. When a transcript of a judgment is taken from the municipal court of St. Paul to the district court of Ramsey county, it becomes a judgment of the latter court as much as if the action originated there. The objection is altogether too technical.

The order appealed from is reversed, and a new trial granted.