Gregory Scott HANSON,
et al., Respondents,

v.

Mark A. WOOLSTON,
et al., Appellants,

and

North American Land Title
Group, Inc., Appellant,

v.

Dale K. Kuhl, Defendant,

Lori Kuhl, Respondent.

No. A04–1628.

Court of Appeals of Minnesota.

July 26, 2005.

Thomas H. Sellnow, Sellnow Law Office, P.A., Long Prairie, MN; and John D. Hagen, Jr., Minneapolis, MN, for respondents.

Randall D.B. Tigue, Minneapolis, MN, for appellants.

Considered and decided by LANSING, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

LANSING, Judge.

This is a consolidated appeal from an order declaring that Gregory Hanson has exclusive title to land redeemed by Mark Woolston and dismissing North American Land Title Group, Inc.'s unlawful-detainer action. The court based both determinations on its conclusion that Woolston's redemption relied on a judgment that was void for lack of subject-matter jurisdiction. The record does not support this conclusion but establishes the absence of personal and territorial jurisdiction. Because the court did not have the opportunity to address whether the lack of personal and territorial jurisdiction appears on the face of the record, the condition necessary for collateral attack of the judgment, we reverse and remand for further proceedings.

## FACTS

Lori Kuhl and her former husband, Dale Kuhl, bought the property at issue in this appeal during their marriage. In January 2001 the Kuhls separated and Dale Kuhl moved out of the Kuhl's Todd County property. Lori Kuhl had difficulty making the mortgage payments. Consequently, on the advice of a loan officer, she defaulted on the mortgage, and the property was foreclosed. Lori Kuhl then asked Gregory and John Hanson, her brother and father respectively, to buy the property at the foreclosure sale. Gregory Hanson (Hanson) bought the property for $86,126.83 and in July 2002 the sheriff issued a certificate of sale in Hanson's name, subject to a twelve-month redemption period.

Before the end of the redemption period, Hanson bought the interests of two creditors who had obtained judgments against Dale Kuhl. Hanson then filed a notice of intention to redeem and obtained a certificate of redemption in his name.

In April 2001 psychologist John Weber obtained a $425 default conciliation court judgment against Dale Kuhl on a claim for professional fees. Weber's statement of claim and summons, dated March 16, 2001, listed Dale Kuhl's Todd County address,

where he had not lived since January 2001. In the order for default judgment and judgment, Dale Kuhl's Todd County address is crossed out and replaced with his correct address in St. Cloud, which is not within Todd County.

Weber assigned the judgment to Mark Woolston, and Woolston transcribed the judgment to district court. Woolston then filed a notice of intention to redeem based on the judgment and redeemed the property for $114,114. Woolston obtained a certificate of redemption and became the final creditor in the line of redemption. The sheriff, in turn, mailed Hanson a redemption check, which Hanson retained but did not cash.

Woolston later conveyed the property to North American Land and Title Group, Inc. (NALT) and to Altair, Inc., a company in which Woolston's trial counsel had an ownership interest. NALT then brought an unlawful-detainer action. At the same time, Hanson and Lori Kuhl brought a quiet-title action against Woolston, alleging that Woolston did not legally redeem the property because the Weber judgment, on which the redemption was based, was void for lack of jurisdiction. Hanson and Lori Kuhl claimed that the conciliation court had lacked jurisdiction over Dale Kuhl because he was not a resident of Todd County when the summons in the Weber action was served.

The district court found that Dale Kuhl was not a resident of Todd County when the summons in the Weber action was mailed, and it is undisputed that Dale Kuhl did not respond and did not appear in that action. Based on its finding of nonresidency, the district court concluded that the conciliation court lacked subject-matter jurisdiction over Weber's claim and that the Weber judgment was therefore void. The district court further concluded that, because the Weber judgment was void and

had no legal effect, Woolston's certificate of redemption was also void. The court declared that Hanson had exclusive title to the property and dismissed Woolston's unlawful-detainer action against the Kuhls. This appeal follows.

## ISSUES

I. Do Hanson and Lori Kuhl have standing to attack collaterally the validity of the Weber conciliation court judgment on which Woolston relied to redeem the Todd County property?

II. Did the satisfaction of the Weber judgment immunize the judgment from collateral attack?

III. Did Hanson waive his right to challenge the validity of the Woolston redemption by retaining the redemption check?

IV. Is the Weber judgment void for lack of jurisdiction?

V. If the Weber judgment is void, are Woolston and his affiliated corporations entitled to the property as third-party bona fide purchasers?

## ANALYSIS

### I

Mark Woolston and his affiliated corporations, North American Land and Title Group, Inc. and Altair, Inc. (collectively "Woolston"), argue that Gregory Hanson and Lori Kuhl lack constitutional and procedural standing to attack the Weber judgment collaterally. We disagree.

Standing is a threshold consideration in determining whether a litigant is entitled to have the courts determine the merits of a dispute. *Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 27 (Minn.1989). The purpose of the standing requirement is to ensure that issues before

the court will be "vigorously and adequately presented." *State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 493 (Minn.1996) (quotation omitted). Standing raises a question of law subject to de novo review. *In re Petition for Improvement of County Ditch No. 86,* 625 N.W.2d 813, 817 (Minn.2001).

### Constitutional Standing

To establish constitutional standing, a potential litigant must demonstrate "injury in fact"—a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (quotation and citation omitted); *Twin Ports Convalescent, Inc. v. Minn. State Bd. of Health,* 257 N.W.2d 343, 346 (Minn.1977). A potential litigant must also demonstrate a fairly traceable connection between the alleged injury in fact and the defendant's alleged conduct and a substantial likelihood that the requested relief will remedy that injury in fact. *Vt. Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 1861–62, 146 L.Ed.2d 836 (2000).

Prudential limitations on standing additionally require courts to refrain from adjudicating "abstract questions of wide public significance" that amount to "generalized grievances" and are most appropriately addressed by the representative branches, *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975), and cases that do not fall within the zone of interests protected by the statute or constitutional provision in question. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). The standing requirement ensures that a potential litigant has "alleged such a personal stake in the outcome of the controversy as to assure th[e] concrete adverseness [that] sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Hanson and Lori Kuhl have alleged a concrete and imminent injury sufficient to establish constitutional standing and ensure that the issues will be specifically framed and vigorously and adequately presented with the necessary adverseness. If the Weber judgment is determined to be enforceable, Lori Kuhl faces eviction from her home of twenty years and Hanson faces the loss of the equity in the property he bought to protect his sister's interests. These are concrete and imminent injuries, traceable to Woolston's conduct, and likely to be redressed if the court grants the relief Hanson and Lori Kuhl have requested. These are also specific—rather than generalized or abstract—and imminent injuries. Hanson and Lori Kuhl therefore satisfy the constitutional and prudential limitations on standing.

### Procedural Standing

Woolston argues that Hanson and Lori Kuhl lack procedural standing to challenge the judgment under Minn.Stat. § 548.14 (2004) and Minn. R. Civ. P. 60.02(d)—the two methods by which a judgment can be challenged *directly*—because they were not parties to the Weber action. But Hanson and Kuhl attacked the Weber judgment for lack of jurisdiction *collaterally* rather than directly. The restrictions of section 548.14 and rule 60.02(d) do not, therefore, apply.

A judgment may be collaterally attacked for lack of jurisdiction when the jurisdictional defect appears on the face of

the record, i.e., when the record affirmatively shows that the issuing court lacked jurisdiction. *Mueller v. Reimer*, 46 Minn. 314, 315, 48 N.W. 1120, 1120 (1891) (ruling that "judgment absolutely void for want of jurisdiction appearing on its face[ ] may be set aside on the motion of any person who, although not a party to the action, has an interest in the property upon which it is a cloud"); *Hurr v. Davis*, 155 Minn. 456, 459, 193 N.W. 943, 944 (1923) (holding that judgment providing relief beyond scope of complaint is void for lack of jurisdiction and open to attack by nonparty whose property rights are affected by judgment, provided that excess relief was apparent on face of record). Accordingly, if Hanson and Lori Kuhl establish in the current action that a lack of jurisdiction appears on the face of the record in the Weber action, they may attack the judgment collaterally.

## II

■ Woolston argues that the district court lacked authority to vacate the Weber judgment because the judgment had been satisfied. We reject this argument because Woolston's acquisition by assignment does not have the same preclusive effect as a party's voluntary payment.

■ Generally, satisfaction of a judgment precludes a party from moving to vacate the judgment. *Dorso Trailer Sales, Inc. v. Am. Body & Trailer, Inc.*, 482 N.W.2d 771, 773 (Minn.1992); *Am. Sharecom, Inc. v. LDB Int'l Corp.*, 553 N.W.2d 433, 435 (Minn.App.1996) (stating that district court lacks subject-matter jurisdiction to set aside satisfied judgment, even if judgment fraudulently procured); *Boulevard Del, Inc. v. Stillman*, 343 N.W.2d 50, 52 (Minn.App.1984) (reasoning that "judgment which is paid and satisfied of record ceases to have any existence, leaving nothing to 'vacate' "). The rule that these cases recognize is intended to

prevent a *party* who voluntarily pays a judgment or accepts the benefit of a judgment from changing his mind and seeking the court's aid in recovering payment. *McCallum v. Western Nat'l Mut. Ins. Co.*, 597 N.W.2d 307, 309 (Minn.App.1999).

Woolston's acquisition of the judgment by assignment was not a payment and satisfaction by a party to the Weber action. The collateral attack by Hanson and Lori Kuhl is consistent with their prior conduct, which did not indicate acceptance of or acquiescence in the Weber judgment. Consequently Woolston's satisfaction does not operate to preclude a collateral attack by Hanson and Lori Kuhl.

## III

■ After Woolston redeemed the property, the sheriff sent Hanson a redemption check for the value of the property. Hanson did not negotiate the check, but he retained it for six months and returned it to the sheriff one or two weeks before trial. Relying on *Clark v. Butts*, 73 Minn. 361, 76 N.W. 199 (1898), Woolston argues that Hanson waived his right to challenge the validity of Woolston's redemption by accepting and retaining the check. The facts in *Clark*, however, are materially different. In *Clark*, judgment creditors redeemed property from a buyer. The buyer went to the sheriff's office and drew out the redemption money. *Id.* at 364, 76 N.W. at 200. A few days later, the buyer challenged the redemption on technical grounds unrelated to jurisdiction. The court held that by accepting the redemption money the buyer waived all the irregularities in the redemption, and that he could not rescind the waiver by returning the redemption money. *Id.* at 367–68, 76 N.W. at 201–02.

*Clark* is distinguishable on two grounds. First, the *Clark* buyer actively solicited the redemption money. Arguably, therefore,

he was aware of the details of the redemption and knowingly waived any irregularities. Hanson, by contrast, did not solicit the redemption check and cannot be said to have knowingly and intelligently waived a challenge to the redemption by retaining an unsolicited redemption check. Second, the *Clark* court specifically noted that the redemption was based on a *valid* judgment, and that "all the minor irregularities in the manner of its entry did not go to the jurisdiction [of the court] or render the judgment void." *Id.* at 368, 76 N.W. at 202. *Clark,* therefore, does not support the proposition that by accepting an unsolicited redemption check Hanson waived jurisdictional defects in the judgment. *Cf. Orr v. Sutton,* 127 Minn. 37, 46, 148 N.W. 1066, 1069 (1914) (holding that by accepting redemption money, landowner waived right to challenge redemption based on valid judgment). Hanson and Lori Kuhl are thus not precluded from collaterally attacking the validity of the Weber judgment for lack of jurisdiction simply because Hanson retained the redemption check.

## IV

■ Woolston argues that the district court erred in concluding that the Weber judgment was void for lack of subject-matter jurisdiction. Woolston maintains that the conciliation court had subject-matter jurisdiction over the Weber action and that Dale Kuhl waived any defect in personal jurisdiction retroactively through his testimony in the present action.

■ Conciliation court is a court of limited jurisdiction. The conciliation court's jurisdiction is limited by the amount of a claim and the "geographic reach of the court's summons." 3A David F. Herr & Laurie A. Kindel, *Minnesota Practice,* General Rules of Practice Annotated § 502.2 (2004). The conciliation

court has subject-matter jurisdiction over civil claims under $7,500 and claims involving consumer-credit transactions under $4,000. Minn.Stat. § 491A.01, subd. 3(a) (2004). Its territorial jurisdiction, on the other hand, is "coextensive with the county in which the court is established." *Id.,* subd. 3(b) (2004). This territorial limitation is effectuated by the restrictions on the geographic reach of the summons, which, subject to specific exceptions, has no force outside the county. *Id.*

■ No exception authorizes the service of a conciliation court summons outside the county boundaries in cases involving a claim against one person for unpaid professional fees. The conciliation court's territorial jurisdiction in the Weber action did not therefore extend outside Todd County. The summons in the Weber action was apparently sent to Dale Kuhl by first-class mail at the Kuhls' Todd County property. But the district court found that Dale Kuhl was not a resident of Todd County when the summons was mailed, and Woolston does not dispute the court's finding. Accordingly, because Dale Kuhl was not a resident of Todd County at the time of service and no statute expressly authorizes service of the summons outside the county, the conciliation court did not obtain territorial jurisdiction over the controversy or effective personal jurisdiction over Dale Kuhl. *Id.,* subd. 3(b); *see Shatto v. Latham,* 33 Minn. 36, 37, 21 N.W. 838, 839 (1884) (determining that service on person outside statutorily limited territorial jurisdiction was ineffective to confer jurisdiction on court).

■ The district court concluded that the territorial limitation in Minn.Stat. § 491A.01, subd. 3, affects the conciliation court's subject-matter jurisdiction. But subject-matter jurisdiction refers to the class of cases a court is authorized to hear. *Bode v. Minn. Dep't of Natural Resources,*

612 N.W.2d 862, 866 (Minn.2000). Personal jurisdiction, by contrast, refers to the court's authority to bind the parties to the action. *Id.* Territorial jurisdiction, which is also implicated in this litigation, limits the geographic area in which a court can exercise jurisdiction. Conciliation courts have subject-matter jurisdiction over civil claims under $7,500 and consumer-credit-transaction claims under $4,000. Minn. Stat. § 491A.01, subd. 3. The statute specifically excludes certain types of claims from the conciliation court's subject-matter jurisdiction. *Id.*, subd. 4 (excluding claims involving title to real property, defamation, specific performance, prejudgment remedies, injunctive relief, eviction, medical practice, and others). Weber's claim for professional fees was less than $7,500 and was not specifically excluded under subdivision 4. The claim therefore exceeded, not the court's subject-matter jurisdiction, but the reach of its personal and territorial jurisdiction.

■ Woolston argues that Dale Kuhl waived any challenge to the court's personal jurisdiction and consented to the entry of judgment against him because he "ratified" the default judgment three years after it was entered. This argument is flawed for two reasons. First, it ignores the conciliation court's territorial limitations, which, except for exclusions that do not apply here, are coextensive with the county in which the court is established. Because service on Dale Kuhl could not effectively be made within the county, the court lacked territorial jurisdiction over the controversy.

■ Second, Woolston's argument relies on Dale Kuhl's testimony *in the present action* that he had no objection to service of the judgment and that he "approved and ratified" the judgment. But personal jurisdiction is waived only when the party submits to the jurisdiction of the

court by appearing or by otherwise invoking the court's jurisdiction. *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 869 (Minn.2000) (holding that defendant waived jurisdiction by moving for summary judgment); *Comm'r. of Natural Resources v. Nicollet County Pub. Water/Wetlands Hearings Unit*, 633 N.W.2d 25, 32–33 (Minn.App.2001) (holding that appellants waived jurisdiction by proceeding through multiple appeals and waiting fourteen years before filing motion to vacate), *review denied* (Minn. Nov. 13, 2001). Dale Kuhl did not submit to the conciliation court's jurisdiction in the Weber action either by appearing or by otherwise invoking the court's jurisdiction. His testimony three years later, after the marriage dissolution, "waiving" any objections to the court's assertion of personal jurisdiction over him cannot render the Weber judgment valid retroactively.

■ Having concluded that the conciliation court lacked personal and territorial jurisdiction and that Dale Kuhl's retroactive ratification did not effectively waive the jurisdictional defects, we must now turn to whether Hanson or Lori Kuhl may challenge the judgment collaterally.

■ A judgment is open to collateral attack when the lack of jurisdiction affirmatively appears on the face of the record. *See Burma v. Stransky*, 357 N.W.2d 82, 86 (Minn.1984) (allowing collateral attack on order when failure to comply with statutorily required notice to nearest relatives appeared affirmatively on face of record); *Leland v. Heiberg*, 156 Minn. 30, 35, 194 N.W. 93, 94 (1923) (stating that "where the record discloses that the summons was served in a manner which was ineffectual to confer jurisdiction, it will not be presumed that a valid service was made in some other way"). For collateral-attack purposes the record includes, among other

things, the pleadings and the judgment. *Wash. Mut. Bank FA v. Farhat Enters., Inc.,* 77 P.3d 1103, 1109 (Okl.Civ.App. 2003); *see also In re Hudson's Guardianship,* 226 Minn. 532, 536, 33 N.W.2d 848, 852 (Minn.1948) (analyzing, for purposes of collateral attack, contents of trial court record).

The limited record provided in this appeal includes the conciliation court statement of claim and summons and the order for judgment on claim and counterclaim. The statement of claim and summons contains no affirmation that Dale Kuhl lived in Todd County in 2001 or was properly served in Todd County. Similarly, the order for judgment on claim and counterclaim indicates that the judgment was obtained by default but does not contain any certification of service, a finding that service was accomplished, or proof that notice of entry of judgment was mailed to Dale Kuhl in Todd County. Significantly, in the order for judgment, which was issued approximately one month after the statement of claim and summons, Dale Kuhl's Todd County address is crossed out and his correct St. Cloud address is inserted—an address that is not within Todd County. These documents raise factual questions on the jurisdictional issue of whether the judgment is void. But because the parties did not litigate whether the lack of jurisdiction appears on the face of the conciliation court record, and the district court did not have an opportunity to consider this issue, we remand for further proceedings.

## V

■ Woolston last argues that even if the Weber judgment is determined to be void, Woolston is entitled to the land as third-party bona fide purchaser. In essence, he argues that he had a right to rely on the validity of the Weber judgment at

the time he redeemed the Kuhl property. We do not agree.

Whether a person who obtains an interest in property through the assignment of a void judgment is entitled to protection as a third-party bona fide purchaser has not been addressed by appellate courts in Minnesota. Other jurisdictions have held, however, that the bona-fide-purchaser doctrine does not apply to a transfer or conveyance based on a void judgment. *See Raniere v. I & M Invs., Inc.,* 159 N.J.Super. 329, 387 A.2d 1254, 1258 (1978) (holding that vendee at void execution sale, although bona fide purchaser, acquired no title), *aff'd,* 172 N.J.Super. 206, 411 A.2d 719, 720 (1980); *see also Lincoln–Mercury–Phoenix, Inc. v. Base,* 84 Ariz. 9, 322 P.2d 891, 894 (1958); *Sprang v. Petersen Lumber, Inc.,* 165 Ariz. 257, 798 P.2d 395, 401 (1990). In *Sprang,* the grantee of a treasurer's deed issued at a tax sale to a buyer who had obtained a void default judgment foreclosing the former property owner's right to redeem the property sought to obtain title to the property as a bona fide purchaser. The court ruled against the grantee, reasoning that, because the default judgment against the former property owner was void for lack of jurisdiction, subsequent transfers based on the judgment conveyed no rights. *Sprang,* 798 P.2d at 400. The court stated:

> The doctrine of bona fide purchaser without notice does not apply [when] there is a total absence of title in the vendor. The good faith of a purchaser cannot create a title where none exists. And the purchaser from one in whom title has been vested by a judicial decree is chargeable with notice of defects apparent on the face of the record in the proceedings in which the decree was entered.

*Id.* at 401 (quoting *Noble v. Kahn,* 206 Okla. 13, 240 P.2d 757, 759 (1952) (citation omitted)).

██ For the same reasons, we conclude that the bona-fide-purchaser doctrine should not apply to create a title to land when there is a total absence of title in the vendor. Thus, if the Weber judgment is void on the face of the record for lack of jurisdiction, Woolston obtained no rights as a bona fide purchaser of the judgment, and, consequently, the redemption based on that judgment is void. Like the grantee's good faith in *Sprang,* Woolston's good faith cannot create title to the property where no title exists. As an assignee, Woolston is chargeable with notice of defects in the judgment apparent on the face of the record in the Weber proceeding. Whether a jurisdictional defect appears on the face of the record remains to be litigated on remand.

## DECISION

We conclude that Gregory Hanson and Lori Kuhl have constitutional standing to attack the judgment collaterally, that Hanson did not waive his right to challenge the validity of the Woolston redemption by retaining the redemption check, and that the satisfaction of the Weber judgment did not immunize the judgment from collateral attack. Although we reverse the district court's determination that the Weber judgment is void for lack of subject-matter jurisdiction, the record establishes that the conciliation court lacked personal and territorial jurisdiction to enter judgment against Dale Kuhl and that Dale Kuhl could not retroactively waive these jurisdictional defects. Whether the judgment may be collaterally attacked depends on whether the jurisdictional defect appears on the face of the record. If the Weber judgment is void on the face of the record, Woolston may not obtain title to the land as a third-party bona fide purchaser. Because the district court did not have an opportunity to consider whether the Weber judgment is void on the face of the record, we remand for further proceedings.

**Affirmed in part, reversed in part, and remanded.**