*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1916**

Lynn D. Schwie,
Plaintiff,

vs.

Armco Unlimited, Inc., et al.,
Defendants,

and

Chicago Title Insurance Company as assignee of
Countrywide Home Loans, Inc., et al., third party plaintiffs,
Respondents,

vs.

AmRes Mortgage, Inc., f/k/a Provident Mortgage
Corporation of Minnesota, et al., third party defendants,
Appellants,

Provinet Financial Services, Inc., judgment debtor,
Co-Appellant,

Access Title, Inc., et al.,
Third Party Defendants.

**Filed December 14, 2015
Vacated
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CV-08-8604

Joseph S. Lawder, Charles E. Nelson, Lindquist & Vennum LLP, Minneapolis, Minnesota (for respondents)

Scott M. Flaherty, Kari S. Berman, Jordan L. Weber, Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellants and co-appellant)

Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellants AmRes Mortgage, Inc., Provinet Financial Services, Inc., and Alan Reid challenge an enforcement judgment that adds Reid and Provinet as judgment debtors, arguing that the district court lacked personal jurisdiction over them. We agree and therefore vacate the judgment.

## FACTS

In 2008, Lynn Schwie initiated this quiet-title action against a number of defendants, including Countrywide Home Loans, Inc. Countrywide served a third-party complaint on AmRes on March 6, 2009. AmRes did not respond, and Countrywide obtained a default judgment against AmRes on November 23, 2010. Countrywide subsequently assigned its interest as a judgment creditor to respondent Chicago Title Insurance Company.

Reid is a shareholder and the CEO of both AmRes and Provinet. At the end of 2009, Reid and Provinet owed $484,925.33 and $313,146.38, respectively, to AmRes. As part of its efforts to collect on the default judgment, Chicago Title obtained revised balance sheets from AmRes that reflected a release of the debts owed by Reid and

2

Provinet. AmRes did not produce any evidence that it received consideration for discharging those debts.

Because it was unable to recover from AmRes, Chicago Title filed a motion for post-judgment relief, seeking to include Reid and Provinet as judgment debtors because they received fraudulent transfers from AmRes. But Chicago Title did not seek to add Reid and Provinet as parties and did not serve them with notice of the motion or the hearing date. On September 24, 2014, the district court granted the motion and issued an order stating, in relevant part:

> 3. The fraudulent and preferential transfers are hereby set aside and Judgment Creditor Chicago Title is permitted to collect the November 23, 2010 Judgment against AmRes as follows:
>
> a. From Alan J. Reid to the extent of the unsatisfied AmRes Judgment but not more than $852,631.92;
> b. From Provinet Financial to the extent of the unsatisfied AmRes Judgment but not more than $313,146;
>
> . . . .
>
> 4. The Judgment Creditor or Sheriff of Hennepin County or any county in which the Judgment is docketed is authorized to levy and execute upon assets of Alan Reid and Provinet Financial to carry out the terms of this Order.

Judgment was entered on September 26. That same day, Chicago Title requested writs of execution in both Hennepin and Scott counties. On November 7, Chicago Title moved the district court to add Reid and Provinet as parties and as judgment debtors. Before the district court ruled on that motion, appellants commenced this appeal.

3

## D E C I S I O N

### I. This court has appellate jurisdiction.

Chicago Title argues that this court lacks jurisdiction because (1) the September 2014 judgment is not final because it was not docketed and (2) Reid and Provinet have no standing to pursue this appeal. We address each argument in turn.

First, finality turns on entry of a judgment rather than docketing. "An appeal may be taken to the Court of Appeals . . . from a final judgment . . . [or] . . . from a final order or judgment made or rendered in proceedings supplementary to execution." Minn. R. Civ. App. P. 103.03(a)-(f). A final judgment ends the litigation on the merits and leaves nothing for the trial court to do but execute the judgment. *T.A. Schifsky & Sons, Inc. v. Bahr Constr. LLC*, 773 N.W.2d 783, 788 (Minn. 2009). The entry of a judgment and the docketing of a judgment are separate procedures. *State by Humphrey v. Certified Servs., Inc.*, 432 N.W.2d 494, 495 (Minn. App. 1988). A final judgment is appealable upon entry, regardless of whether the judgment is docketed. *See id.* (stating that the time for appeal runs from the date of entry rather than docketing of the judgment).

The September 2014 judgment permitted Chicago Title to collect on the default judgment from Reid and Provinet, with amounts not to exceed the debt each owed to AmRes. The judgment effectively ended the litigation on the merits of Chicago Title's claims. The plain language of the order on which judgment was entered allows for execution of the judgment by Chicago Title, the Sheriff of Hennepin County, and the Sheriff of any other county where the judgment is docketed. And Chicago Title

implicitly recognized the judgment was final by filing for writs of execution in both Hennepin and Scott counties the day the judgment was entered.

Second, the fact that Reid and Provinet were not parties to the district court proceedings does not affect the issue of appealability. Although a judgment cannot typically be enforced against non-parties, a non-party who is adversely affected by a judgment has the right to appeal the judgment. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 75 n.5 (Minn. 2012) ("[A] judgment may not be enforced against persons who are not parties to an action."); *In re Marriage of Sammons*, 642 N.W.2d 450, 456 (Minn. App. 2002) (stating that a non-party may appeal a judgment that adversely affects his or her rights). In *Sammons*, husband transferred legal title of the family home and his business to his mother to shelter those assets during marriage-dissolution proceedings. 642 N.W.2d at 453-54. The district court found the transfer was fraudulent and gave wife a mortgage interest in the home and business. *Id.* at 454. On appeal, wife argued that mother lacked standing to challenge the district court's judgment. *Id*. at 456. We rejected this argument. Although mother did not participate in the underlying proceedings, she had standing to appeal the district court's decision because it adversely affected her. *Id*.

Likewise, Reid and Provinet were adversely affected by the September 2014 judgment that made them responsible for debts AmRes had forgiven or otherwise released. The district court's order exposed them to liability that did not exist prior to the judgment. As in *Sammons*, Reid and Provinet's exposure to those liabilities adversely affected their interests and give them standing to appeal. *Id.* The fact that they were not

parties to the district court's proceedings is not a controlling factor for purposes of this issue. Because the district court's judgment is final and adversely affects Reid and Provinet's interests, we have appellate jurisdiction.

**II.      The district court lacked personal jurisdiction over Reid and Provinet.**

The determination of whether personal jurisdiction exists is a question of law, which we review de novo. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 569 (Minn. 2004); *see also C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, 772 N.W.2d 528, 533 (Minn. App. 2009). A district court does not have jurisdiction over a non-party. *Sammons*, 642 N.W.2d at 457 (citing *In re Ferlitto*, 565 N.W.2d 35, 37 (Minn. App. 1997)). Due process requires notice and an opportunity to be heard. *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 565 (Minn. App. 1994) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267-68, 90 S. Ct. 1011, 1020 (1970)), *review denied* (Minn. Feb. 14, 1995). Actual notice of a lawsuit will not establish personal jurisdiction unless the party seeking relief substantially complies with rule 4 of the Minnesota Rules of Civil Procedure. *Smith v. Flotterud*, 716 N.W.2d 378, 382 (Minn. App. 2006) (discussing notice in regard to service of process), *review denied* (Minn. Sept. 27, 2006).

Chicago Title moved for post-judgment relief on the ground that AmRes's release or transfer of the debts owed by Reid and Provinet was fraudulent under Minn. Stat. §§ 513.44, .45(a) (2014). Chicago Title did not bring Reid and Provinet into the action as parties and did not serve them with notice of its motion or the hearing date. The district court determined that it had personal jurisdiction over Reid and Provinet because the

6

post-judgment motion was a proceeding in rem. We rejected this analysis in *Sammons*, holding that exercising quasi in rem jurisdiction over property that had been fraudulently transferred does not withstand due-process scrutiny. 642 N.W.2d at 457. Just as in *Sammons*, Reid and Provinet were not afforded due process. Their due-process rights included the right to notice, a timely opportunity for a hearing, representation by an attorney, an opportunity to present evidence and argument, an impartial decision-maker, and a reasonable decision based upon the record. *Id*. They were denied these rights.

Chicago Title asserts that even if Reid and Provinet were not joined as parties, they had notice and an opportunity to be heard because they are indistinguishable from AmRes. But "[s]ervice of process must accord strictly with statutory requirements." *Lundgren v. Green*, 592 N.W.2d 888, 890 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. July 28, 1999). Although Reid is closely connected with both AmRes and Provinet, they are separate and distinct entities. *W. Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 706 (Minn. 2009) ("[A] corporation is a separate legal entity from its owners and shareholders."); *Metro Bldg. Cos. v. Ram Bldgs., Inc.*, 783 N.W.2d 204, 207 (Minn. App. 2010) ("A corporation is considered an artificial person."), *review denied* (Minn. Aug. 10, 2010). While it is true that Reid was the CEO and a shareholder of both AmRes and Provinet, any constructive notice of the district court proceedings is insufficient to protect Reid's and Provinet's due-process rights. *See O'Sell v. Peterson*, 595 N.W.2d 870, 872 (Minn. App. 1999) (stating that "[s]ervice in a manner not authorized by a rule or statute is ineffective.").

7

Finally, Chicago Title argues that Reid and Provinet effectively waived the service requirement because Reid and AmRes were represented by the same law firm, which had told Chicago Title to direct all service items regarding Reid to the firm. Chicago Title also asserts that Reid and Provinet made general appearances during the supplementary post-judgment proceedings and therefore any argument they have based on personal jurisdiction fails. We are not persuaded. Waiver of personal jurisdiction occurs "when the party submits to the jurisdiction of the court by appearing or by otherwise invoking the court's jurisdiction." *Hanson v. Woolston*, 701 N.W.2d 257, 265 (Minn. App. 2005), *review denied* (Minn. Oct. 18, 2005). Reid and Provinet never submitted to the district court's jurisdiction or officially appeared before the court. The fact that Reid's attorney directed service items to go to the same firm that AmRes's service items would go to did not invoke the court's jurisdiction or waive the service requirement. Nor did Reid's participation in post-judgment enforcement discovery on behalf of AmRes. In sum, Reid and Provinet did not waive the service requirement. Because the district court lacked jurisdiction over Reid and Provinet, the September 2014 judgment must be vacated.

**Vacated.**