*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0572**

L and T Tree Services, LLC, a Minnesota limited liability company,
Appellant,

vs.

Daniel J. Andersen, et al.,
Defendants,

Pine Financial Group, Inc., a Minnesota corporation,
Respondent.

**Filed September 30, 2024
Affirmed
Larson, Judge**

Hennepin County District Court
File No. 27-CV-23-8182

Ryan R. Dreyer, Scott A. Peitzer, Morrison Sund PLLC, Minnetonka, Minnesota (for appellant)

Jared M. Goerlitz, Goerlitz Law, PLLC, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

In this foreclosure-redemption action, appellant L and T Tree Services, LLC (L&T) challenges the district court's decision to grant respondent Pine Financial Group, Inc.'s (PFG) motion for summary judgment. Because we conclude the district court correctly

applied existing law that accepting redemption money waives the right to challenge a redemption, we affirm.

## FACTS

This case involves junior creditors L&T's and PFG's attempts to redeem foreclosed property (the property) formerly co-owned by defendants Daniel and Luci Andersen.[1] As explained in more detail below, if a mortgagor does not redeem their property, creditors may do so in order of seniority by, among other things, making a payment within seven days of the preceding creditor's redemption period. *See* Minn. Stat. § 580.24 (2022). The following facts are undisputed.

PFG lent Daniel money for his real-estate business. After Daniel failed to repay PFG, on June 9, 2020, PFG obtained a judgment for $150,763.48 against Daniel for failure to repay the loan. PFG registered this judgment with the Hennepin County Registrar of Titles on July 27, 2020.

L&T is a tree-service company. In May 2020, L&T performed tree-service work at the property and issued an invoice to Daniel for $5,350. On August 24, 2021, following a lawsuit over the failure to pay the May invoice, L&T obtained a $5,770 judgment against Daniel. L&T registered this judgment with the Hennepin County Registrar of Titles on September 23, 2021.

The property went into foreclosure and, in January 2023, the sheriff sold the property at a foreclosure sale for $477,345.96. The Andersens attempted to sell the

---

[1] For clarity, we refer to Daniel and Luci collectively as "the Andersens" and refer to them individually by their first names.

property to acquire the assets to redeem the property during the subsequent six-month redemption period, but they were unable to sell the property.

During the Andersens' six-month redemption period, PFG brought to the district court's attention a naming issue on PFG's June 2020 docketed judgment. The district court issued an Order to Vacate Judgment and fixed the naming issue on April 18, 2023. The parties strongly disagree regarding the legal implications of this order. Thereafter, on May 30, 2023, L&T filed a complaint requesting, in relevant part, declaratory judgment that PFG could not redeem the property.[2]

On June 20, 2023, L&T registered a notice of intent to redeem the property with the Hennepin County Registrar of Titles. On June 30, 2023, PFG registered the June 2020 judgment for a second time with the Hennepin County Registrar of Titles. On July 3, 2023, PFG filed a notice of intent to redeem the property with the Hennepin County Registrar of Titles.

The Andersens' six-month redemption period expired on July 10, 2023. On July 14, 2023, L&T paid the Hennepin County Sheriff's Office $498,263.08 plus fees to redeem the property. On July 24, 2023, PFG paid $516,143.48 plus fees to redeem the property. With the funds from PFG's redemption, the Hennepin County Sheriff's Office issued a redemption check to L&T for $516,143.48. L&T deposited the check before July 31, 2023.

On October 12, 2023, PFG filed a motion for summary judgment, arguing that L&T waived its rights to contest PFG's redemption when it deposited the redemption check.

---

[2] Later, on July 30, 2023, L&T filed a supplemental complaint with PFG's permission. L&T did not change the count relevant to this appeal.

3

L&T opposed the motion, arguing that whether it had the requisite intent to waive its right to challenge the redemption was a genuine issue of material fact. The district court granted PFG's motion, reasoning that L&T waived their right to challenge PFG's redemption when it deposited the redemption check.

L&T appeals.

## DECISION

L&T argues the district court erred when it granted PFG's motion for summary judgment. A motion for summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. A genuine issue of material fact exists if, considering the record as a whole, a rational trier of fact could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). "[M]ere speculation, without some concrete evidence, is not enough to avoid summary judgment." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotation omitted). We apply a de novo standard of review to a district court's legal conclusions and view the evidence in the light most favorable to the nonmoving party. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002) (citations omitted).[3]

To understand L&T's challenges to the district court's order, we first provide a brief overview of Minnesota's statutory redemption process. Second, we explain the caselaw

---

[3] Generally, in a posttrial appeal, we review equitable determinations for an abuse of discretion. *See City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011). However, in the summary-judgment context, we review the district court's application of equitable doctrines de novo. *See Herlache v. Rucks*, 990 N.W.2d 443, 450 n.4 (Minn. 2023).

regarding waiver in the context of redemption. Last, we address L&T's arguments with respect to the district court's order.

**A.**

We begin with a brief overview of those portions of Minnesota's statutory redemption process that are relevant to this appeal. "[T]he right of redemption is a strict legal right, to be exercised, if at all, in accordance with the terms of [the] statute by which the right is conferred . . . ." *In re Petition of Nelson*, 495 N.W.2d 200, 202 (Minn. 1993) (first alteration in original) (quotation omitted).

A creditor may redeem real property sold in a mortgage-foreclosure sale if the mortgagor fails to redeem the property within the statutory redemption period. Minn. Stat. § 580.24(a) (2022). When multiple creditors have a right to redeem, the statute sets forth a priority order and timeline:

> the most senior creditor having a legal or equitable lien upon the mortgaged premises, or some part of it, subsequent to the foreclosed mortgage, may redeem within seven days after the expiration of the [mortgagor's] redemption period . . . and each subsequent creditor having a lien may redeem, in the order of priority of their respective liens, within seven days after the time allowed the prior lienholder by paying the amount required under this section.

Minn. Stat. § 580.24(a).

To redeem the foreclosed property, a creditor, within that creditor's seven-day redemption period, must file a notice of intent to redeem and then pay the legally required

amount[4] "to the holder of the sheriff's certificate of sale . . . or to the sheriff for the holder." Minn. Stat. § 580.24(c). If a creditor properly redeems, "the certificate of redemption, executed, acknowledged, and recorded . . . operates as an assignment to the creditor of the right acquired under such sale, subject to such right of any other person to redeem as provided by law." Minn. Stat. § 580.27 (2022). But if a creditor's seven-day redemption period expires and the creditor has failed to redeem, the creditor may not thereafter redeem the property. *See Nelson*, 495 N.W.2d at 202. When a creditor has redeemed by paying the sheriff, rather than directly paying the holder of the certificate of sale, and a junior creditor thereafter redeems, the sheriff sends a redemption check to the senior creditor. *See, e.g.*, *Hanson v. Woolston*, 701 N.W.2d 257, 261 (Minn. App. 2005), *rev. denied* (Minn. Oct. 18, 2005).

At issue in this case is the legal consequence of depositing a redemption check received from the sheriff where the party who deposited the check also seeks to challenge the redemption.

**B.**

The Minnesota Supreme Court has issued a series of decisions explaining the consequences of a party accepting a redemption payment while also seeking to challenge the propriety of the redemption. We describe these cases below.

---

[4] The amount required for a creditor to redeem after a foreclosure sale is "the amount required under section 580.23." Minn. Stat. § 580.24(c) (2022). That amount is "the sum of money for which the [property was] sold, with interest" and other costs. Minn. Stat. § 580.23, subd. 1(a) (2022).

6

In *Clark v. Butts*, a creditor redeemed property from the foreclosure-sale purchaser. 76 N.W. 199, 200 (Minn. 1898). The purchaser went to the sheriff's office and withdrew the redemption money. *Id.* A few days later, the plaintiff, who had attempted to buy the sheriff's certificate of sale from the purchaser, challenged the creditor's redemption on technical grounds. *Id.* The supreme court held that the purchaser waived his claims regarding the irregularities in the redemption process when he accepted the redemption money. *Id.* Therefore, even if the purchaser returned the money, it would not rescind the waiver to allow the plaintiff to challenge the creditor's redemption. *Id*. at 201-02.

A decade later, the supreme court decided a series of cases regarding numerous creditors seeking to redeem after a mortgage foreclosure. *Orr v. Sutton*, 137 N.W. 973 (Minn. 1912) (*Orr I*); *Orr v. Sutton*, 148 N.W. 1066 (Minn. 1914) (*Orr II*). In *Orr I*, the supreme court held that one creditor's redemption was invalid because he failed to pay a registry tax. 137 N.W. at 974.[5] In *Orr II*, the foreclosure-sale purchaser sought to overturn the district court's decision that the plaintiffs (who had purchased judgment from another creditor) had redeemed the property. 148 N.W. at 1067. The purchaser argued the

---

[5] PFG argues that L&T forfeited its reliance on *Orr I* because it did not cite *Orr I* as authority in the district court. But our caselaw limits parties from raising new *issues* on appeal, not from citing new *authority*. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating parties generally not allowed to raise either new issues or new theories on appeal). And such a conclusion would be directly contrary to our rules placing a continuing obligation on attorneys to provide relevant authority to the court. Minn. R. App. P. 128.05 ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed or after oral argument but before decision, a party may promptly file a letter with the clerk of the appellate courts setting forth the citations."); Minn. R. Prof. Conduct 3.3(a)(2) (creating obligation for attorney to disclose legal authority "known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel").

7

plaintiffs could not redeem because the landowner tendered payment of the judgment debt before the plaintiffs' right to redeem, although plaintiffs refused to accept the payment. *Id.* at 1068. The supreme court agreed "that a tender of payment of a judgment by the judgment debtor destroy[ed] and extinguishe[d] the right to make the judgment the basis for a redemption." *Id.* at 1069. Nevertheless, the supreme court concluded that the purchaser had waived this challenge because he accepted redemption money and, thereby, relinquished any title to the property. *Id.* at 1069-70. In so holding, the supreme court stated the legal principle that: "Even when the redemptioner has no right to make it, or does not conform to the law in so doing, the title nevertheless passes to him if the one from whom redemption is made accepts the redemption money . . . ." *Id.* at 1069.

The next year, in *Grant v. Bibb*, the supreme court was again faced with deciding the consequence of accepting redemption money and then seeking to challenge the redemption. 152 N.W. 728 (Minn. 1915). There, the foreclosure-sale purchaser challenged a creditor's redemption. *Id.* at 728. The creditor had obtained a judgment in a contested lawsuit and the appellate period had not expired. *Id.* The creditor redeemed the property, and the plaintiffs accepted the redemption money. *Id.* Subsequently, judgment in favor of the creditor in the contested lawsuit was reversed on appeal. *Id.* Plaintiffs then brought an action "to set aside the redemption, alleging that the redemption was unlawful, and . . . that they [were] ready, able, and willing to return the redemption money . . . ." *Id.* The trial court granted the creditor's motion to dismiss. *Id.* The supreme court affirmed, concluding that plaintiffs likely would have been entitled to the property if they had refused to recognize the redemption. *Id.* at 728-29. But because plaintiffs "received the redemption

8

money and accepted and appropriated it to themselves," they conceded that the creditor had the "right to redeem and waived any defect in [the creditor's] title to do so." *Id.* at 729.

From this line of cases, we discern that a party waives the right to challenge a redemption when they accept redemption money and appropriate it to themselves. With this principle in mind, we evaluate the district court's decision to grant PFG's summary-judgment motion.

## C.

L&T challenges the district court's decision to grant PFG's summary-judgment motion on the ground that L&T waived its right to challenge PFG's redemption when it deposited the redemption check. L&T makes four primary arguments to support its claim: (1) the district court should have denied PFG's motion for summary judgment because L&T could have proven at trial that it did not intend to waive the right to challenge the redemption; (2) *Clark*, *Orr II*, and *Grant* do not address cases where the redemptioner did not have a valid interest to redeem; (3) this court's decision in *Hanson* precludes granting summary judgment; and (4) PFG cannot benefit from a waiver because it has unclean hands.

First, L&T argues that waiver is a factual issue that must be left for trial. We disagree.[6] L&T correctly observes that some of the cases addressing this issue arose after

---

[6] L&T also argues that, under the general-waiver doctrine, depositing the check was not an "intentional relinquishment of a known right." *See Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). Because we conclude the supreme court has held that depositing a redemption check in this context constitutes a waiver, we need not address this argument.

a motion for a new trial was denied. *See Clark*, 76 N.W. at 200; *Orr II*, 148 N.W. at 1067. But the supreme court has affirmed decisions deciding this issue during dispositive-motion practice. *See Grant*, 152 N.W. at 728 ("The trial court sustained the demurrer.").

Second, L&T argues that *Clark*, *Orr II*, and *Grant* are inapplicable because they do not address a claim where the redemptioner did not have a valid interest to redeem. L&T relies primarily[7] on its claim that PFG held a judgment senior to (rather than junior to) L&T's judgment. According to L&T, because PFG failed to redeem in the seven days after the Andersens' six-month redemption period ended, PFG had no right to redeem. *See Nelson*, 495 N.W.2d at 202 (holding a creditor has no right to redeem if its redemption is untimely). We are unpersuaded. In *Grant*, the creditor's judgment was invalidated after the plaintiffs accepted the redemption money from the creditor—i.e., there was no valid judgment. 152 N.W. at 728. Despite concluding that plaintiffs likely would have been entitled to the property if they had refused to recognize the redemption, the supreme court concluded that plaintiffs "received the redemption money and accepted and appropriated it to themselves," and, thereby, conceded that the creditor had the "right to redeem and waived any defect in [the creditor's] title to do so." *Id.* at 729. Thus, we conclude the supreme court does not distinguish claims where the redemptioner would not have had a valid interest to redeem. *See id.*; *see also Orr II*, 148 N.W. at 1069 ("Even when the

_____

[7] L&T also argues that PFG had no valid interest to redeem because of the homestead exemption. *See* Minn. Stat. § 510.01 (2022). Because we conclude the caselaw does not treat claims where the redemptioner does not have a valid redemption interest differently, we need not address this issue.

10

redemptioner *has no right to make it* . . . the title nevertheless passes to him if the one from whom redemption is made accepts the redemption money . . . ." (emphasis added)).

Third, L&T argues that our decision in *Hanson* supports its argument that depositing the redemption check did not constitute a waiver. In *Hanson*, a junior creditor redeemed after a senior creditor's redemption, and the sheriff sent the senior creditor a redemption check. 701 N.W.2d at 263. The senior creditor did not solicit the check but retained the check without depositing it. *Id.* at 261, 263. After the junior creditor's judgment was invalidated, the junior creditor argued the senior creditor had waived its challenges to the redemption because it retained the check. *Id.* at 263. We disagreed, distinguishing *Clark* on the grounds that (1) the record did not show the senior creditor was aware of defects in the redemption; (2) the check from the sheriff was not solicited; and (3) the senior creditor did not cash the check.[8] *Id.* at 263-64. Here, while L&T did not solicit the check from the sheriff, the similarities end there. Taking the facts in the light most favorable to L&T, the record shows that L&T knew about the alleged defects in PFG's redemption when L&T received the redemption check. And, despite an active lawsuit challenging those very defects, L&T decided to deposit the check.

Finally, L&T argues the district court erred when it granted summary judgment because waiver is an equitable remedy and evidence in the record shows PFG had unclean hands. L&T asserts that "PFG attempted to game the system by re-registering its . . .

---

[8] *Hanson* also asserted that *Clark* was distinguishable because it was based on a "valid judgment." 701 N.W.2d at 264. As described above, while this is a factual distinction with *Clark*, this is not a distinction with *Grant*.

11

judgment" and, therefore, cannot seek an equitable remedy like waiver. Here, the district court did not discuss or decide whether PFG had unclean hands. "A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the trial court in deciding the matter before it." *Thiele*, 425 N.W.2d at 582 (quotation omitted). Because the district court did not decide this issue, we decline to address it.

For the foregoing reasons, we conclude there are no genuine issues of material fact and PFG is entitled to judgment as a matter of law because L&T waived its challenges to PFG's redemption when it deposited the redemption check. *See* Minn. R. Civ. P. 56.01. We, therefore, affirm the district court's decision to grant PFG's motion for summary judgment.

**Affirmed.**