In re the MARRIAGE OF Douglas Allan SAMMONS, Petitioner, Respondent,

Jennifer Ann Sartwell, f/k/a Jennifer Ann Sammons, Respondent,

v.

Eleanor A. Sammons, Appellant.

No. C0–01–1650.

Court of Appeals of Minnesota.

April 9, 2002.

Douglas Alan Sammons, Crystal, MN, pro se respondent; and Jeanette M. Tuzinski, Tuzinski & Zick, LLC, Minneapolis, MN, for respondent.

Esther E. McGinnis, Warren E. Peterson, Peterson, Fram & Bergman, P.A., St. Paul, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge, KLAPHAKE, Judge, and PORITSKY, Judge.

## O P I N I O N

PORITSKY, Judge.*

Eleanor Sammons ("Sammons" or "Eleanor Sammons") appeals an order denying her motion to vacate selected portions of the dissolution decree that terminated the marriage of her son, Douglas Sammons ("Douglas Sammons") and his wife, respondent, Jennifer Sartwell. Specifically, Eleanor Sammons challenges those provisions of the decree that impose a constructive trust in favor of Sartwell upon certain properties belonging to Sammons. Because the district court did not have jurisdiction to enter a judgment that adversely affected Sammons's rights when Sammons was not a party to the proceeding, we reverse the district court decision and vacate those provisions of the decree that impose a constructive trust upon Sammons's property.

## FACTS

In January 2001, Jennifer Sartwell and Douglas Sammons were divorced after a lengthy separation period beset with court battles. Sartwell and Douglas Sammons had been married since 1988. During their marriage, the couple experienced recurring financial problems relating to both Douglas Sammons's business (Diversified Securities—a company providing home security system installation service) and their personal affairs. In 1992, the couple's failure to make mortgage payments caused them to lose their home. Eleanor Sammons purchased a home for them at 4101 Jersey Ave, in Crystal, Minnesota. Douglas Sammons and Sartwell took title to the home through a warranty deed from Eleanor Sammons in 1994 and assumed the mortgage.

In early 1997, after having his business's federal and state tax ID numbers revoked for failure to pay sales tax, Douglas Sammons sold the remaining assets of Diversified Securities to his mother's business (Mobile Lock and Safe Co.) for $6,000. Douglas Sammons and Sartwell also executed a promissory note to Eleanor Sammons in the amount of her unpaid house-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

related expenses. Eleanor Sammons also re-acquired the title to the house and moved in with the couple and their children. Sartwell claims that Douglas Sammons told her that the purpose of the property transfers to his mother was to protect their home and his business assets from the IRS if complications arose from his tax problems.

In June of 1999, Sartwell and Douglas Sammons entered into a marital termination agreement. According to Sartwell, she was tricked into believing that the purpose of this agreement was not to dissolve the marriage, but to allow Douglas Sammons to regain ownership of his business and his home from his mother. Sartwell maintains she was told that Eleanor Sammons would never sign the home or business back to her son while he was married to Sartwell. The properties were never transferred back to Douglas Sammons, and in August of that same year, Douglas Sammons told Sartwell to vacate the house.

Through a series of temporary orders in a domestic abuse proceeding, Sartwell had both Douglas and Eleanor Sammons removed from the house. Ultimately these orders were vacated, and Douglas and Eleanor returned to the home while Sartwell moved into a nearby apartment. In December 1999, in the dissolution proceeding, the district court ordered Douglas Sammons to pay spousal maintenance and child support. Over the ensuing months, Douglas Sammons made no payments to Sartwell. As a result, contempt-of-court proceedings were initiated against Douglas Sammons. In May 2000, Hennepin County prepared a motion and show cause order, the effect of which would have been to join Eleanor Sammons as a party in interest, but Sammons claims she never received the order, and the record does not show that this order was ever served on

her. Nor does the record show that an order was entered joining her as a party in the dissolution.

On September 15, 2000, a hearing in the dissolution was held to sort out maintenance and property distribution issues. At the hearing, Douglas Sammons maintained that he was honoring the June 1999 marital termination agreement, which provided for no maintenance payments. Douglas Sammons also stated that he could not pay maintenance in any event, because he was not employed. According to him, his mother would not let him work for her because she did not want Jennifer Sartwell to be able to garnish his wages. Douglas Sammons also stated that he had no ownership interest in either the house or Diversified Securities, Inc., because he transferred the house and sold the business, both to his mother, in 1997 for legitimate financial reasons.

On January 19, 2001, the district court issued its decree. In relevant part, the decree found that Sammons was holding in a constructive trust for her son the following properties: the family home, the assets of Diversified Securities, Inc., and the business property where Mobile Lock and Safe Co. is located. The court awarded Sartwell a mortgage interest in the amount of $10,664.82 on the homestead and a mortgage interest in the amount of $50,000 on the business property and assets, both payable to Sartwell within ninety days of the entry of judgment. Douglas Sammons never made these payments, and Sartwell began a proceeding to reclaim the properties.

In April of 2001, Eleanor Sammons moved to vacate the portions of the dissolution decree that created the constructive trust. In August, the court denied this motion on the ground that Sammons had no standing to challenge any part of the decree because of her failure to join the

dissolution proceedings as a party in interest. The court also reiterated that a constructive trust was an appropriate instrument through which the court could gain jurisdiction over the property and distribute it between the parties, due to the fraudulent nature of the property transfers that occurred between Douglas and Eleanor Sammons. At the motion hearing, Sartwell agreed to remove from the constructive trust the property upon which the Mobile Lock and Safe Co. is located, and the court modified the decree accordingly.

On appeal, Eleanor Sammons argues that the district court should have vacated its decree because (1) it lacked jurisdiction over her and her property, and (2) the court erred in imposing a constructive trust upon Sammons's property because no fraudulent transfers occurred between her and her son. Sartwell argues (1) that Sammons has no right to make this appeal because (a) an order denying a motion to vacate is not an appealable order when the time to appeal the original judgment has expired, and (b) Sammons has no standing to appeal, and (2) that in any case, the district court properly created a constructive trust. In a separate motion, Sartwell has also requested attorney fees for the appeal. Sammons opposes the motion.

## ISSUES

I. Is the district court's order denying Sammons's motion to vacate portions of the judgment an appealable order?

II. Does Sammons have standing on appeal to challenge those portions of the decree that impose a constructive trust upon her property?

III. Did the court err in imposing a constructive trust upon Sammons's property?

IV. Is Sartwell entitled to attorneys' fees on appeal?

## ANALYSIS

### I.

■■■ The denial of a post trial motion to vacate a final judgment is generally not appealable. *Angelos v. Angelos*, 367 N.W.2d 518, 519 (Minn.1985). Parties may not extend their time to appeal the original judgment by filing a motion to vacate. *Carlson v. Panuska*, 555 N.W.2d 745, 746 (Minn.1996). The supreme court has held, however, that in some cases denials of motions to vacate may be appealable. *Fink v. Shutt*, 445 N.W.2d 869, 870 (Minn. App.1989). The critical factor is whether the party appealing participated in the original action, so that an appeal from the judgment would allow the party to also raise the propriety of its vacation. *Spicer v. Carefree Vacations, Inc.*, 370 N.W.2d 424, 425 (Minn.1985). If the party seeking to appeal did not participate in the proceedings leading to the judgment, then an appeal from the judgment would present no issue for appeal on review. *Fink*, 445 N.W.2d at 870.

■■ Here, the district court rejected Sammons's motion to vacate, reasoning that Sammons could have intervened in the dissolution. However, whether Sammons knew of the dissolution and consciously bypassed an opportunity to join the proceedings is irrelevant. According to *Spicer*, "[t]he appealability of an order refusing to vacate a * * * judgment does not depend on whether a defendant had actual knowledge of the suit before the time to appeal from the judgment has expired." *Spicer*, 370 N.W.2d at 425 (citation omitted). It is undisputed that, regardless of whether she knew of the dissolution proceeding, Sammons was not a party to it. Because Sammons was never

a party to the proceeding and because the decree affected her property interests, appealing the denial of her motion to vacate is the only method by which her arguments can be presented for appellate review. We conclude that Sammons has the right to appeal from the order denying her motion to vacate.

## II.

■ "Standing is a jurisdictional question to be determined by this court." *In re Implementation of Util. Energy Conservation Improvement Programs,* 368 N.W.2d 308, 312 (Minn.App.1985).

■ The district court found that Sammons had no standing to make her motion to vacate because she was not a party to the dissolution proceeding. Relying on this finding, Sartwell argues that Sammons should have no standing to make this appeal. We disagree. There are two separate responses to Sartwell's argument, both of which are persuasive.

■ First, although we have not been directed to any Minnesota authority directly on point, the general rule is that a person may appeal from a judgment that adversely affects his or her rights, even if the person was not a party to the proceeding below.

> As a general rule a party or a privy to the record, or *one who is injured by the judgment, or who will be benefited by its reversal, may appeal* or sue out a writ of error.

4 C.J.S., Appeal and Error, § 156 (emphasis added) (footnote omitted); *see In re Estate of Strong,* 194 Ill.App.3d 219, 141 Ill.Dec. 155, 550 N.E.2d 1201, 1206 (1990) ("A nonparty has standing to appeal if he has a direct, immediate and substantial interest in the subject matter, which would be prejudiced by the judgment or benefited by its reversal.").

■ Second, Minnesota case law, although not directly on point, supports Sammons's right to a review of an order that adversely affects her rights. Whether a person participated in the underlying proceedings is not determinative of whether that person has standing to appeal the underlying decision. *In re Estate of Magnus,* 444 N.W.2d 295, 297–98 (Minn.App. 1989) (stating that lack of participation in underlying proceeding does not defeat standing to appeal, so long as reviewing court limits scope of appeal to record formed at underlying proceeding; opinion does not address the question of whether the appellants were parties). A party who does not participate in proceedings leading to a default judgment nonetheless has a right to appeal from an order refusing to vacate the judgment. *Fink,* 445 N.W.2d at 870 (party seeking to appeal had knowledge of underlying proceeding). The denial of a motion to vacate a default judgment is appealable even if the moving party was served with process in connection with, or had actual notice of, the underlying proceeding. *Spicer,* 370 N.W.2d at 425 (moving party had been served with process in connection with underlying proceeding).

In both *Fink* and *Spicer,* defendants had a right to appeal from default judgments. In each case, the defendants had been served with process and were made parties. Thus, they had a clear opportunity to participate in the proceedings prior to the entry of the judgments against them. They were nonetheless allowed to appeal from orders denying their motions seeking relief from the judgments. In our opinion, Sammons is entitled to at least the same right to review as was granted the appellants in *Fink* and *Spicer,* since she was not served with process and not made a party in district court, and so never had the opportunity in that court to defend her rights to her property.

Sartwell further contends that Sammons lacks standing to appeal because Sammons knew of the proceedings all along and awaited the outcome before deciding to act. As noted above, the fact that Sammons may have had actual knowledge of the pending dissolution action does not prevent her from appealing the denial of her motion to vacate. *Id.; Fink,* 445 N.W.2d at 870. Moreover, regardless of what Sammons knew of her son's dissolution, there is no indication in the record that she was served with any pleading indicating that the court was being asked to grant relief against her. As a result, Sammons never received formal notice of Sartwell's request to impose a constructive trust upon Sammons's property. We conclude that Sammons was under no obligation to intervene, and her failure to do so does not deprive her of standing to appeal.

### III.

Turning to the merits of the appeal, we conclude that district court was without jurisdiction to impose a constructive trust upon Eleanor Sammons's property. The legal title to the property involved was solely in Sammons's name. As we have noted, at no time was Sammons a party to the dissolution. The court thus did not have personal jurisdiction to enter a judgment affecting her rights to her property. The district court may not exercise jurisdiction over a nonparty. *In re Ferlitto,* 565 N.W.2d 35, 37 (Minn.App. 1997) (where wife's attorney was not a party to the dissolution proceeding, district court did not have jurisdiction to order attorney to pay husband $5,000 that wife had taken from parties' home and used to pay attorney his fees.)

Although it is not clear, it appears that the district court may have been proceeding under the theory that it gained quasi-in-rem jurisdiction over the property in question by reason of Douglas Sammons's fraudulent (as the court found) transfers of the property to his mother. This theory cannot withstand due-process scrutiny. Government action may not deprive individuals of liberty or property interests without due process, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Minnesota Constitution. *See Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988) (stating that due process guarantees are the same under both state and federal constitutions). Due process protections include "notice, a timely opportunity for a hearing, the right to be represented by counsel, an opportunity to present evidence and argument, the right to an impartial decisionmaker, and the right to a reasonable decision based solely on the record." *Humenansky v. Minnesota Bd. of Med. Exam'rs,* 525 N.W.2d 559, 565 (Minn.App.1994) (citing *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970)), *review denied* (Minn. Feb. 14, 1995). Sammons was not provided with any of these protections prior the district court's entry of the judgment against her in the dissolution proceeding.

Sartwell contends that because Sammons responded by affidavit to another related court matter,[1] this is enough to prove that she had actual notice of her potential involvement in the dissolution proceeding. Sartwell further contends that she requested a constructive trust in one of her pleadings. Based on these facts, Sartwell argues that Sammons

---

1. Sartwell actually argues that Sammons appeared in the dissolution proceeding, but this is a misstatement. Sammons appeared in the domestic abuse proceeding, which was a separate action.

should have known that her property was in jeopardy and should not be able to argue on appeal that she did not get sufficient notice. As we stated earlier, however, although Sammons may have had actual notice of the pendency of the dissolution, the record does not show that she had notice that the decree would affect her property interests, nor does it show that she was even aware that Sartwell made a request implicating her property. Despite the arguments raised by Sartwell, any knowledge Sammons may have had about the dissolution proceeding did not give the court personal jurisdiction over her, nor did such knowledge equate to the due process guarantees of required notice and opportunity to be heard.

■ One of the conclusions of law on which the district court relied when it denied Sammons's motion to vacate was her failure to intervene in the proceeding pursuant to Minn. R. Civ. P. 24. On appeal, Sartwell cites *Erickson v. Bennett*, 409 N.W.2d 884, 886–87 (Minn.App.1987), for the proposition that a would-be intervenor is not allowed to await the outcome of a proceeding before deciding to intervene. The conclusion of law reached by the district court and Sartwell's argument both imply that Sammons had some affirmative duty to intervene in this proceeding, and her failure to do so allowed the district court to distribute her property even though she was not a party. This conclusion is, as a matter of law, incorrect. First, there is no support in Minnesota caselaw for the proposition that if a person could have intervened but did not, the court can nonetheless enter a judgement against that person. Second, the line of cases upon which Sartwell relies is inapposite because it holds only that the district court does not generally favor post-trial intervention. *Brakke v. Beardsley*, 279 N.W.2d 798, 801 (Minn.1979). In the pres-

ent case, Sammons is not attempting to intervene. She is, instead, appealing the denial of a motion to vacate.

Because (1) the district court did have personal jurisdiction over Sammons, and (2) any assertion of quasi-in-rem jurisdiction over her property violated Sammons's right to due process, we conclude that the district court erred when it imposed a constructive trust upon Sammons's property. In light of this conclusion, we need not address Sartwell's claim that Sammons's actions were a proper basis for the district court to impose such a trust.

### IV.

■ Minn.Stat. § 518.14 allows this court to award attorneys' fees on appeal if: 1) the fees are necessary for the good faith assertion of the party's rights; 2) the party from whom the fees are sought has the means to pay them; and 3) the party seeking fees does not have the means to pay them. Minn.Stat. § 518.14, subd. 1, (1)–(3) (Supp.2001). Sartwell claims she cannot afford to pay her attorneys' fees on appeal. She also claims that Sammons has the ability to pay them for her. While Sartwell supports the claim that she cannot pay her fees, she does not make a showing that Sammons has the ability to pay those fees. Moreover, Sammons does provide documentation, in the appendix to her reply brief, to support her claim that she is not able to pay Sartwell's fees. Given these facts, it does not appear that Sartwell has established the existence of those elements required by section 518.14 that would entitle her to need-based attorneys' fees. *See Niemi v. Schachtschneider*, 435 N.W.2d 117, 119–20 (Minn.App. 1989) (holding party not entitled to award of attorneys' fees because she failed to adequately demonstrate a disparity in the financial resources of the parties).

Nor is it appropriate to award conduct-based attorneys' fees to Sartwell. Section 518.14 allows conduct-based fees to be awarded "against a party who unreasonably contributes to the length or expense of the proceeding." For the court to award conduct-based fees, the conduct must have occurred within the litigation; behavior occurring outside of the litigation process is not a basis for such fees. *Geske v. Marcolina,* 624 N.W.2d 813, 819 (Minn. App.2001). There is nothing in the record to suggest that Sammons's actions within the present appeal contributed unreasonably to the length or expense of the appeal.

### DECISION

Because the district court did not have personal jurisdiction over Sammons, and because the assertion of quasi-in-rem jurisdiction over Sammons's property violated Sammons's due process rights, we reverse the district court's decision and vacate those portions of the dissolution decree that impose a constructive trust upon: (1) the real property located at 4101 Jersey Avenue North, Crystal, Minnesota; and (2) the business known as Diversified Security and Mobile Lock & Safe Company. We deny Sartwell's motion for attorney fees on appeal.

**Reversed; motion denied.**