*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1283**

Medtronic, Inc., et al.,
Respondents,

vs.

Michael Doerr, et al.,
Appellants.

**Filed February 9, 2015
Affirmed in part and vacated in part
Stauber, Judge**

Anoka County District Court
File No. 02-CV-13-4759

Jonathan S. Parritz, Sarah A. Horstmann, John T. Duffey, Maslon, Edelman, Borman & Brand, L.L.P., Minneapolis, Minnesota (for respondents)

Michael Puklich, Neaton & Puklich, P.L.L.P., Chanhassen, Minnesota (for appellants Michael Doerr and David Bartels)

Mark R. Bradford, Kevin P. Hickey, Bassford Remele, P.A., Minneapolis, Minnesota; and

Shannon Hampton Sutherland, Catherine E. Beideman, Duane Morris, L.L.P., Philadelphia, Pennsylvania (for appellant K2M)

        Considered and decided by Reilly, Presiding Judge; Stauber, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

This appeal from a temporary injunction arises out of alleged breaches of noncompete agreements by the appellant-employees and tortious interference with these agreements by the appellant-corporation. Appellants argue that (1) the district court lacked personal jurisdiction to grant injunctive relief against a third-party employee of appellant-corporation who is not a party to these proceedings; (2) the injunction against appellant-employees was overly broad in scope and duration; and (3) the injunction proceedings were materially flawed. Because the district court did not have personal jurisdiction over the third-party employee who was not a party to these proceedings, we vacate the temporary injunction as it applies to him. But because the injunction proceedings were otherwise not materially flawed, and because the injunction of appellant-employees was not overly broad in scope or duration, we affirm the district court's injunction as to the appellant-employees.

### FACTS

Respondents are Medtronic, Inc., a Minnesota corporation; Medtronic Sofamor Danek, Inc., a wholly owned subsidiary of Medtronic, Inc.; and Medtronic Sofamor Danek USA, Inc., a wholly owned subsidiary of Medtronic Sofamor Danek, Inc. (collectively Medtronic). Medtronic's wholly owned Medtronic Spine subsidiaries are engaged in the research, development, marketing, and sale of products and therapies used by physicians to treat spinal and cranial disorders and injuries. Medtronic's principle customers are medical facilities which use its products and spine-specialist physicians,

2

including orthopedic surgeons, neurosurgeons, and interventional radiologists who use Medtronic's products for the benefit of their patients.

In 2000, appellant Michael Doerr began working for Medtronic as a sales representative in the spine division of the company. In 2007, appellant David Bartels began working for Medtronic in the same capacity. The sales territory assigned to Doerr and Bartels included Kalamazoo, Battle Creek, and St. Joseph in western Michigan. Medtronic's three largest customers in that area include Borgess Medical Center, Bronson Hospital, and Lakeland Regional Health System.

As sales representatives, Doerr and Bartels were provided with significant amounts of confidential information belonging to Medtronic, including sales and pricing strategies and methodologies, knowledge of customer needs and buying history patterns, competitive pricing information, and training. Doerr and Bartels were subject to Medtronic Employee Agreements under which they agreed to act loyally on Medtronic's behalf; to act as fiduciaries with respect to Medtronic's confidential information, property, and customer goodwill; and not to use or disclose Medtronic's confidential information to, or for the benefit of, anyone else.

The employment agreements also limited Doerr and Bartels from competing with Medtronic as follows:

> **4.1    Restrictions on Competition.**    Employee agrees that while employed by MEDTRONIC, and for two (2) years after the last day Employee is employed by MEDTRONIC, Employee will not be employed by or otherwise perform services for a CONFLICTING ORGANIZATION in connection with or relating to a COMPETITIVE PRODUCT or COMPETITIVE

RESEARCH AND SUPPORT. If, however, during the last twelve (12) months of employment with MEDTRONIC, Employee had no management duties or responsibilities and was engaged exclusively in sales activities, including selling soliciting the sale, or supporting the sale of MEDTRONIC PRODUCTS through direct contact with MEDTRONIC CUSTOMERS, this restriction will be for a duration of only one (1) year after the last day Employee is employed by MEDTRONIC, and will prohibit Employee only from soliciting, selling to, contacting, or attempting to divert business from, whether directly or by managing, directing or supervising others, any MEDTRONIC CUSTOMER on behalf of a CONFLICTING ORGANIZATION in connection with or relating to a COMPETITIVE PRODUCT or COMPETITIVE RESEARCH AND SUPPORT.

Because Doerr and Bartels were both sales representatives during their last year of employment with Medtronic, the one-year restriction on competition set forth in the second sentence of Section 4.1 is applicable.

On June 14, 2013, Doerr and Bartels were offered positions with appellant K2M, a medical-technology company that competes with Medtronic in the spinal-surgery market in the State of Michigan and throughout the United States. Shortly after receiving offers from K2M, Doerr and Bartels allegedly downloaded to their laptop computers a substantial amount of confidential Medtronic information and allegedly transferred a large quantity of material to cloud services, printers, and jump drives. This information allegedly included the Bronson Spinal Implants Line Items List. Doerr also received an email on July 1, 2013, which contained an attachment of the complete price list for Borgess.

Doerr and Bartels resigned from Medtronic on July 12, 2013, to begin working for K2M. At about the same time, Rene Vega, a surgery technician at Borgess, one of Doerr

4

and Bartels's Medtronic customers, resigned to join K2M. Vega was then observed meeting with Doerr and Bartels at a coffee shop on July 29, 2013, where the trio spent over an hour working on their computers and exchanging papers. Two days later, on July 31, 2013, Ron Ward of K2M emailed Doerr and others asking which of their surgeon customers would be "strategic education targets" for invitations to K2M's "April 2014 Deformity Course." Doerr forwarded the email to Bartels and Vega, and Bartels responded by identifying three of his former Medtronic customers.

On August 1, 2013, a K2M executive allegedly emailed Doerr requesting information regarding Medtronic's policies. Doerr responded by providing a detailed analysis of Medtronic's strategies including prices, percentages, and bonus structures related to Medtronic's "Asset management" program. In the meantime, on August 6, 2013, Doerr and Bartels again met with Vega at a coffee shop, working on computers and exchanging files for over three hours. Shortly thereafter, on August 7, 8, and 9, 2013, Vega created several product request forms for Borgess, comparing claimed benefits and costs of K2M products to Medtronic products. According to Medtronic, the accuracy of the cost-savings comparisons would not be possible unless Vega was in possession of the confidential price list for Borgess which Doerr received in the July 1, 2013 email.

Medtronic filed suit alleging claims: (1) against Doerr and Bartels for violations of their employment agreements with Medtronic, fraud, breach of loyalty, and breach of fiduciary duty; (2) against K2M for unjust enrichment, tortious interference with Doerr's and Bartels's employment agreements with Medtronic, and aiding and abetting breach of duty of loyalty, breach of fiduciary duty, and fraud by Doerr and Bartels; (3) against

5

Doerr for restitution or specific performance and damages; and (4) against K2M, Doerr, and Bartels for conspiracy, trade secret misappropriation, and tortious interference with Medtronic's prospective contractual relations. On June 3, 2014, Medtronic moved a temporary injunction under Minn. R. Civ. P. 65.02, restraining Doerr and Bartels from employment with K2M pending trial. The motion also sought to enjoin K2M from soliciting business from Doerr's and Bartels's former Medtronic customers or their current Grand Rapids customers.

Prior to Medtronic's injunction motion, the district court denied appellants' request to present live testimony at the hearing. Following the hearing, Medtronic submitted a letter narrowing the scope of relief sought in its motion. Medtronic clarified that it

> seeks only to restrain [appellants] from using Messrs. Doerr, Bartels or Vega in any way with respect to the Medtronic accounts previously served by Messrs. Doerr and Bartels in the Kalamazoo area, and to restrain K2M from using Messrs. Doerr and Bartels with respect to . . . accounts in the Grand Rapids, Michigan, area. K2M would remain free to service these accounts with other personnel. [Appellants] should also, of course, be enjoined from using or disclosing Medtronic confidential information, or using any property belonging to Medtronic.

On June 26, 2014, the district court filed its order concluding that after weighing the factors set forth in *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 137 N.W.2d 314 (1965), the "balance of harms analysis favors Medtronic as it relates to the injunction concerning [Doerr and Bartels] and Mr. Vega in Kalamazoo, but favors K2M as it relates to the injunction request concerning . . . accounts in Grand Rapids." The

court also concluded that, because Doerr and Bartels "should not be financially harmed by the imposition of the injunction, and because both corporations have deep pockets and are able to make significant payments in the event of a judgment against them, . . . a bond is not necessary in this case." Thus, the district court granted Medtronic's motion to restrain Doerr and Bartels *and* Vega "from servicing any customers previously serviced" by Doerr and Bartels "during their previous one year of employment with Medtronic," but denied Medtronic's motion to restrain K2M from utilizing Doerr and/or Bartels to service its customers in the Grand Rapids, Michigan area. This appeal followed.

## D E C I S I O N

"A temporary injunction may be granted if by affidavit, deposition testimony, or oral testimony in court, it appears that sufficient grounds exist therefor." Minn. R. Civ. P. 65.02(b). "The party seeking the injunction must demonstrate that there is an inadequate legal remedy and that the injunction is necessary to prevent great and irreparable harm." *U.S. Bank Nat'l Ass'n v. Angeion Corp.*, 615 N.W.2d 425, 434 (Minn. App. 2000), *review denied* (Minn. Oct. 25, 2000). The district court has broad discretion to grant or deny a temporary injunction, and this court will reverse only for an abuse of that discretion. *Id.*

### I.

A district court may not exercise personal jurisdiction over a nonparty. *In re Marriage of Sammons*, 642 N.W.2d 450, 457 (Minn. App. 2002); *In re Ferlitto*, 565 N.W.2d 35, 37 (Minn. App. 1997). Whether personal jurisdiction exists is a question of

law, which an appellate court reviews de novo. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 569 (Minn. 2004).

Appellants argue that, because Medtronic never joined Vega as a party to these proceedings and never requested injunctive relief directly against him, the district court did not have personal jurisdiction over Vega. Appellants argue that the direct injunction against Vega was, therefore, improper.

Medtronic contends that the district court properly enjoined Vega because, under Minn. R. Civ. P. 65.04, the district court has authority to enjoin Vega as an employee of K2M.[1] This rule provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Minn. R. Civ. P. 65.04.

---

[1] Medtronic also argues that appellants' argument is not properly before this court because it was not raised below. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that "[a] reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it"); *see also In re Ivey*, 687 N.W.2d 666, 670 (Minn. App. 2004) (recognizing lack of personal jurisdiction as a defense which, unlike subject matter jurisdiction, may be waived), *review denied* (Minn. Dec. 22, 2004). Appellants concede that their argument was not raised below, but claim that we should "reject Medtronic's waiver argument" because Medtronic "never sought direct injunctive relief against Vega and never named him as a defendant." We agree and conclude that the interests of justice warrant consideration of appellants' argument on the merits. *See* Minn. R. Civ. App. P. 103.04 (stating that this court may address any issue in the interests of justice).

Because K2M is a party to the lawsuit and Vega is an employee of K2M, the district court had authority to enjoin Vega under rule 65.04. But appellants argue that the injunction against Vega was direct, and not derivative as an employee of K2M under rule 65.04. To support their claim, appellants cite language from the district court's order stating: "Medtronic's motion to restrain Defendants Michael Doerr and David Bartels and Rene Vega from servicing any customers previously serviced by Michael Doerr and David Bartels during their previous one year of employment with Medtronic is **GRANTED.**" Appellants argue that, because the district court never enjoined K2M, it could not derivatively enjoin Vega as an employee under rule 65.04.

We agree. The plain language of the district court's order indicates that the district court never enjoined K2M. Nowhere in the district court's order does it state that K2M, or Vega as an employee of K2M, is enjoined. Instead, the order specifically granted "Medtronic's motion to restrain Defendants Michael Doerr and David Bartels and Rene Vega." Moreover, the order repeatedly mentions the "Individual Defendants" and "Vega." By repeatedly using the terms "Individual Defendants" and "Vega," rather than K2M or the "Defendants" in general, the district court directly enjoined Doerr, Bartels, and Vega instead of K2M, and Vega as an employee of K2M. This reasoning is further supported by the following paragraph in the district court's order:

> Medtronic has presented circumstantial evidence that the Individual Defendants have violated their employee agreements using . . . Vega as a proxy in order to drive business to K2M in their former territory, including Kalamazoo, Michigan. The only way to prevent this alleged collusion from continuing is to *restrain the Individual Defendants and Mr. Vega* from servicing any accounts in the

Kalamazoo, Michigan area that had previously been served by the Individual Defendants in the final year of their employment with Medtronic. *K2M is free to serve those accounts with a different sales representative, but the Individual Defendants and Mr. Vega are to have no contact with them*. As such Medtronic's request for an injunction restraining the *Individual Defendants and . . . Vega* from servicing accounts that had been previously serviced by the Individual Defendants in their roles at Medtronic is granted.

(Emphasis added.)

Because the district court's order specifically enjoins the "Individual Defendants and . . . Vega" from servicing accounts in the Kalamazoo area rather than enjoining K2M, or Vega as an employee of K2M, and allows K2M to service these accounts "with a different sales representative," the injunction against Doerr, Bartels, and Vega is direct, and not derivative as employees of K2M under rule 65.04. A direct injunction of Vega, as a non-party, is improper because the district court may not exercise jurisdiction over a nonparty. *See Sammons*, 642 N.W.2d at 457. Accordingly, we vacate the injunction as it applies to Vega. And because we conclude that the district court did not have personal jurisdiction over Vega to enjoin him as a nonparty, we need not address appellants' remaining arguments with respect to the injunction against Vega.

**II.**

A temporary injunction is an "extraordinary equitable remedy" that serves to maintain "the status quo pending a trial on the merits." *Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 294 (Minn. App. 1995) (quotation omitted). A district court "has authority to draft an injunction so that it provides an adequate remedy without imposing unnecessary hardship on the enjoined party." *Cherne Indus., Inc. v. Grounds & Assoc.*

10

*Inc.*, 278 N.W.2d 81, 93, n.6 (Minn. 1979). "An abuse of discretion occurs when the district court disregards either the facts or the applicable principles of equity." *First State Ins. Co. v. Minn. Mining and Mfg. Co.*, 535 N.W.2d 684, 687 (Minn. App. 1995) (quotations omitted), *review denied* (Minn. Oct. 18, 1995).

Appellants argue that the injunction against Doerr and Bartels was an abuse of discretion because (a) the "indefinite duration of the injunction is contrary to the parties' contracts"; and (b) the "scope of the injunction is contrary to law."

### A.    Duration

"Generally, injunctive relief based on a contract must be coextensive with the terms of the contract." *Cherne Indus.*, 278 N.W.2d at 93. Consequently, if the restrictive period of a covenant not to compete has expired, an injunction should not be granted to enforce the covenant. *Id.* But there may be situations where injunctive relief extending beyond the expiration of the period established in the covenant is appropriate. *Id.*

The parties agree that the one-year covenant not to compete set forth in the second sentence of section 4.1 of the parties' employment contracts is applicable to Doerr and Bartels. As a result, the general covenant not to compete would have expired on July 12, 2014, one year from the date Doerr and Bartels resigned from Medtronic. Nonetheless, the district court extended the covenants not to compete through the scheduled trial date in February 2015, which, we understand from oral argument, has now been continued until April 2015.

Appellants argue that the district court's extension of Doerr and Bartels's one-year covenant not to compete was an abuse of discretion because the parties' employment

11

contracts provide a "sole tolling remedy." This provision states that "[i]n the event Employee breaches or violates Sections 4.1, 4.2 or 4.3 [of the employment agreement], the duration of the restrictions contained therein shall be extended by the number of days the Employee remains in breach or violation thereof." Appellants contend that, based on the "timeline" set forth in the district court's order, the alleged breaches occurred over a period of 34 days from July 12, 2013, to August 15, 2013. Thus, appellants argue that, based upon the parties' employment agreements, the temporary injunction issued by the district court could only extend the one-year covenant not to compete by 34 days.

Appellants' argument fails for several reasons. First, as Medtronic points out, the tolling provision is limited to sections 4.1, 4.2, and 4.3 of the employment agreements. The district court, however, specifically found that appellants also violated sections 3.4 and 3.6 of the agreement. These provisions are general requirements that employees refrain from disclosing confidential information. And section 3.6 provides a specific provision that prohibits an employee "from rendering services to a CONFLICTING ORGANIZATION for two . . . years following termination of employment with MEDTRONIC to the extent the Employee would use, disclose or rely upon CONFIDENTIAL INFORMATION or be induced to use, disclose or rely on CONFIDENTIAL INFORMATION during the course of rendering such services." By issuing an injunction through February 2015, and later April 2015, which is less than two years after Doerr and Bartels resigned from Medtronic, the district court ordered an equitable remedy that is consistent with the parties' employment agreements.

12

In their reply brief, appellants argue that Doerr and Bartels never violated the second sentence of section 3.6 for which the two-year provision applies. But this argument is contrary to the district court's order. The district court determined that Medtronic was likely to succeed on allegations that Doerr and Bartels violated the "confidentiality provisions of their employment agreements" by meeting with Vega and exchanging confidential information. This is exactly what the second sentence of section 3.6 prohibits.

Appellants' argument that the duration of the temporary injunction runs afoul of the tolling provision also fails because the district court's order indicates that the wrongdoing did not end on August 15, 2013, but was still ongoing. Specifically, the district court determined that "[t]he only way to prevent [the] alleged collusion [between Doerr, Bartels, and Vega] from *continuing* is to restrain [Doerr and Bartels] and Mr. Vega from servicing any of the accounts in the Kalamazoo, Michigan area . . . ." (Emphasis added.) Because the district court found that the wrongdoing was "continuing," the district court was not limited to enjoining Doerr and Bartels for 34 days under the tolling provision as suggested by appellants.

Finally, even if the tolling provision was applicable, the district court had discretion in fashioning an equitable remedy. *See Cherne*, 278 N.W.2d at 93 (recognizing that "there may be situations where injunctive relief extending beyond the expiration of the period established by the covenant is appropriate"). The district court initially enjoined Doerr and Bartels from servicing their prior customers in the Kalamazoo area through the trial date set in February 2015, which is only about six

months longer than the one-year period set forth in the employment contracts. Although the enjoinment period was later extended through the new trial date of April 2015, we cannot conclude that the enjoinment period is unreasonable in light of the sensitive information at issue and the extensive, secretive conduct Doerr and Bartels are alleged to have engaged in to violate their employment agreements. Therefore, appellants cannot demonstrate that the duration of the temporary injunction was an abuse of discretion.

**B.      Scope**

Appellants also contend that the scope of the injunction was overly broad because it prohibited Doerr and Bartels from servicing all of their former customers in the Kalamazoo area, despite evidence presented by Medtronic that Doerr and Bartels breached their employment agreements with respect to only one former customer. We disagree. The record reflects that before leaving Medtronic, Doerr and Bartels were responsible for Medtronic's customers in the Kalamazoo area. The record also reflects that Vega was assigned these customers when he began working for K2M. The district court found that Doerr and Bartels met with Vega for several hours at a local coffee shop on two occasions and exchanged Medtronic's confidential information. The district court also found that after these meetings, several surgeons in the Kalamazoo area that had previously been customers of Medtronic began using K2M products more frequently. The district court then determined that the "only way" to prevent the alleged collusion between Doerr, Bartels, and Vega, was to enjoin them from servicing these customers. In light of the evidence of the alleged collusion between Vega, Doerr, and Bartels, and evidence demonstrating that the alleged collusion resulted in K2M receiving new

14

business from several former Medtronic customers in the Kalamazoo area, we conclude that the district court's enjoinment of Doerr and Bartels from servicing their former Kalamazoo customers was reasonable. *See Cherne Indus.*, 278 N.W.2d at 93, n.6 (stating that a district court "has authority to draft an injunction so that it provides an adequate remedy without imposing unnecessary hardship on the enjoined party"). Moreover, the district court specifically allowed K2M to service customers in the Kalamazoo area with other sales representatives, which would limit the prejudice to K2M. And the district court allowed Doerr and Bartels to service other customers, thus limiting any prejudice to them. Accordingly, the scope of the district court's temporary injunction was not an abuse of discretion.

## III.

The rules of civil procedure provide that "[n]o temporary injunction shall be granted without notice of motion or an order to show cause to the adverse party." Minn. R. Civ. P. 65.02(a). The rules further provide that "[a] temporary injunction may be granted if by affidavit, deposition testimony, or oral testimony in court, it appears that sufficient grounds exist therefor." Minn. R. Civ. P. 65.02(b).

Appellants argue that they were denied a fair opportunity to oppose the injunction motion. To support their claim, appellants assert that the majority of Medtronic's exhibits were designated "highly confidential," which prohibited appellants from viewing the information they were accused of diverting and answering the allegations with facts. Appellants also assert that they were denied the opportunity to depose the private investigator who "supposedly witnessed the 'coffee shop' meetings," and were not

15

allowed to present the oral testimony of Doerr and Bartels. Thus, appellants argue that the temporary injunction should be vacated because the injunction proceedings were "materially flawed."

Appellants' argument is without merit. The district court was not obligated to hear oral testimony from Doerr and Bartels at the temporary injunction hearing. *See* Minn. R. Civ. P. 65.02(b); *Drummond v. Hoelscher*, 383 N.W.2d 383, 384-85 (Minn. App. 1986). Moreover, Medtronic gave appellants notice of its motion for temporary injunction 14 days prior to the hearing on the motion, which is consistent with the notice requirements for non-dispositive motions under Minn. R. Gen. Pract. 115.04. And appellants had notice that injunctive relief would be requested by Medtronic as such relief was also sought in Medtronic's complaint. Further, with respect to the private investigator, his identity was provided 14 days before the temporary injunction hearing, which provided appellants the opportunity to depose the private investigator. If the 14 days was not sufficient notice to depose the private investigator, appellants should have requested a continuance.

Finally, we find it troubling that the majority of Medtronic's exhibits were marked as "highly confidential," which appears to have limited appellants' access to these documents. But the designation of the exhibits as "highly confidential" was likely necessary in light of the sensitive information at issue. And, as Medtronic points out, it seems that appellants could have been more aggressive in seeking to lift the confidential designations. The district court was aware of appellants' position and decided to proceed with the hearing. Therefore, we conclude that appellants have not demonstrated that the

16

district court abused its discretion in conducting the injunction proceedings under rule 65.02.

**Affirmed in part and vacated in part.**